IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JOSE MOYHERNANDEZ,
    Plaintiff,

v.                                             Civil No. 3:22cv20 (DJN)

MR. COUNSELOR WARD, *et al.*,
    Defendants.

## MEMORANDUM OPINION

Jose Moyhernandez, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to *Bivens*.[1] The action proceeds upon the Particularized Complaint. (ECF No. 20.) This matter comes before the Court on the Motion to Dismiss filed by Defendants Antoine, Hall and Ward ("Defendants").[2] (ECF No. 35.) Defendants provided Moyhernandez with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Moyhernandez has filed a response. (ECF No. 42.) As explained below, the Motion to Dismiss will be GRANTED and the action will be DISMISSED.

### I.     STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the petitioner, as the party asserting jurisdiction, to prove that federal jurisdiction qualifies as proper. *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen.*

---

[1]     *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2]     By Memorandum Opinion and Order entered on November 13, 2023, the Court dismissed the claims against Defendants Laybourn and Fish, because Moyhernandez failed to serve them in a timely manner. (ECF Nos. 43–44.) Accordingly, the portion of the Motion to Dismiss addressing lack of service on Defendants Laybourn and Fish is moot.

*Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Relevant here, a Rule 12(b)(1) motion may attack the petition on its face, asserting that the petition fails to state a claim upon which subject matter jurisdiction can lie. *Id.*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.*, stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.  SUMMARY OF MOYHERNANDEZ'S ALLEGATIONS

In his Particularized Complaint, Moyhernandez alleges the following:[3]

    1. On about the summer 2019, at Federal Correctional Complex Petersburg, Virginia, the inmate [C.P.] was assigned to share with the Plaintiff the cell 7-5, D South Housing Unit. By then, inmate [C.P.] already was infected with genital herpes virus (HSV-2) but Plaintiff did not, according to federal government medical records and inmate's assertions. HSV-2 infection is very contagious, traumatic, devastating, and expensive to treat chronic diseases, that can be consider[ed] a biological weapon. However, Counselor Ward, a federal government employee responsible for both inmates [C.P.'s] and Plaintiff['s] cell assignations and safety, knowing or should have known their HSV-2 conditions, did ignore the before described safety threats keeping these inmates sharing that cell for several weeks more, without do nothing to prevent Plaintiff['s] HSV-2 contagion, as result of inmate [C.P.'s] sanitary negligences, living under the before described cell confinement conditions.

    2. Beside the before described Counselor Ward conducts, neither medical staff . . . Hall—who were responsible[] for both inmates [C.P.'s] and Plaintiff['s] health care and safety, and therefore would knew or should have known these inmates['] HSV-2 conditions —, nor safety staff Antoine—who was responsible for both inmates [C.P.'s] and Plaintiff['s] safety, and therefore knew or should have known their HSV-2 conditions—did take any measure to prevent Plaintiff['s] HSV-

---

[3]     The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation and spelling in quotations from the Particularized Complaint.

3

2 contagion, in case that inmate [C.P.] neglected his disease sanitary protocols living under the before described cell confinement conditions.

3. Then, inmate [C.P.] did deploy a disturbing conduct living under the before described cell confinement conditions: doing drugs, using Plaintiff['s] personal items without authorization and no[t] cleaning the toilet, sink, or any other of his mess up.

4. Thus, by about early November 2019, sharing in the before mentioned cell with inmate [C.P.], toilet, sink, items, etc., having neither an idea about the threats that he was facing and therefore, defenseless before it, due to the before described federal employs conducts, Plaintiff was infected with the inmate [C.P.'s] HSV-2.

5. After his HSV-2 contagion, Plaintiff is suffering mental, physical, and economical damages; between them are: 1) fears to inadvertently spread his HSV-2 to other people and will even be killed because of that; 2) insomnia; 3) nightmares; 4) low self-esteem; 5) suicide thought; 6) he can't normally share with his relatives, without risks of infect them [with] his HSV-2, ever on his life; 7) pain; 8) sores; 9) blisters; 10) scars; 11) burning; 12) after his release from prison, he will ha[ve] to pay for his HSV-2 infection treatments and for any other situation relate[d] to this disease that may happen then.

(ECF No. 20, at 1–3.) Moyhernandez raises the following claim for relief:

> Claim One: Defendants subjected Moyhernandez to cruel and unusual punishment under the Eighth Amendment by assigning him to a cell with an inmate who had HSV-2 and by not warning him that his cellmate had the disease leading to Moyhernandez's contraction of HSV-2. (*Id.* at 3–5.)

Moyhernandez asks for monetary damages and "[t]o order the pertinent authority to issue Plaintiff a[] humanitarian (U) Visa . . . [so] he can legally stay in the United States receiving medical treatment for his HSV-2 contagion after his release from prison." (*Id.* at 5–6.)

### III. ANALYSIS

Although the Court sympathizes with Moyhernandez's situation, as discussed below, *Bivens* does not provide Moyhernandez with an implied right of action for damages. Thus, his claim must be dismissed for lack of subject matter jurisdiction and as legally frivolous.

#### A. *Bivens* Remedy

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages

4

against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Specifically, the Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). The Supreme Court explained that although "the Fourth Amendment does not provide for money damages 'in so many words,'" the court could nevertheless "authorize a remedy under general principles of federal jurisdiction." *Ziglar v. Abbassi*, 582 U.S. 120, 131 (2017) (quoting *Bivens*, 403 U.S. at 392, 396). In the following decade, the Supreme Court recognized only two additional contexts, or implied causes of action, in which an individual could pursue a claim for monetary damages against federal officials for constitutional violations. *Id.* The Court has explained:

> In *Davis v. Passman*, 442 U.S. 228, (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. *Id.* at 248–249. And in *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. *See id.*, at 19. These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

*Id.* As recently explained by the United States Court of Appeals for the Fourth Circuit:

> Though it initially described *Bivens* broadly as establishing that "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right," *Carlson*, 446 U.S. at 18, in the 43 years since *Carlson*, the Court has "consistently rebuffed" requests to expand implied *Bivens* actions. *Hernandez v. Mesa*, 140 S. Ct. at 735, 743 (2020); *see also Egbert v. Boule*, 142, S. Ct. 1793, 1799 (2022). In the last five years alone, the Court has scaled back *Bivens* significantly, delivering a trilogy of opinions expressing opposition toward any expansion of *Bivens* actions. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (noting that "expanding the *Bivens* remedy is now considered a disfavored judicial activity" (internal quotation marks omitted)); *Hernandez*, 140 S. Ct. at 742–43 (noting that

5

> if "the Court's three *Bivens* cases [had] been . . . decided today, it is doubtful that we would have reached the same result" (alterations in original) (internal quotation marks omitted)); *Egbert*, 142 S. Ct. at 1802 ("Now long past the heady days in which this Court assumed common-law powers to create causes of action [as in *Bivens*], we have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." (internal quotation marks and citations omitted)).

*Bulger v. Hurwitz*, 62 F.4th 127, 136 (4th Cir. 2023) (alterations and omission in original). Thus, "the Supreme Court all but closed the door on *Bivens* remedies." *Dyer v. Smith*, 56 4th 271, 277 (4th Cir. 2022) (citing *Egbert*, 596 U.S. at 504) (Gorsuch, J. concurring). However, instead of overruling *Bivens*, the Supreme Court has elected "to severely limit" its reach "by imposing a highly restrictive two-step analysis" that district courts must follow. *Bulger*, 62 F.at 136–37 (citing *Hernandez*, 140 S. Ct. at 743).

First, "a court must determine whether a claim falls within the causes of action authorized under the Supreme Court's three *Bivens* cases — *Bivens*, *Davis*, and *Carlson* — or whether it 'arises in a new context' or involves a 'new category of defendants.'" *Id.* (quoting *Hernandez*, 140 S. Ct. at 743).[4] "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Ziglar*, 582 U.S. at 139. If the context is "new," then the Court must "'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension' of *Bivens*." *Bulger*, 62 F.4th at 137 (quoting *Hernandez*, 140 S. Ct. at 743). "This 'special factors' inquiry must focus on 'separation of power principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." *Id.* (quoting *Hernandez*, 140 S. Ct. at 743). "Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress or

---

[4] "If the context is not new . . . then a *Bivens* remedy continues to be available." *Tun-Cons v. Perrotte*, 922 F.3d 514, 522–23 (4th Cir. 2019).

6

the courts?' If there is a rational reason to think that the answer is 'Congress'—as will be in most every case — no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92.[5]

### B. Moyhernandez's Claim Presents a New Context

The Court first considers whether this case involves a "new context" for *Bivens* purposes. In Claim One, Moyhernandez argues that Defendants subjected him to cruel and unusual punishment under the Eighth Amendment by assigning him to a cell with an inmate who had HSV-2 and by not warning him that his cellmate had the disease leading to Moyhernandez's infection with HSV-2. (ECF No. 20, at 3–5.) Thus, it appears that Moyhernandez argues that he was subject to unconstitutional conditions of confinement, and that Defendants failed to protect him from the risk of his cellmate transmitting HSV-2 to Moyhernandez. Moyhernandez's claims does not fall precisely within the implied causes of actions authorized under *Bivens*, *Davis* or *Carlson*.

"The Supreme Court has instructed not only that 'new context' must be understood broadly, but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846 (citing *Egbert*, 596 U.S. at 496). Thus, the Supreme Court "has made clear that, for a case to be 'different in a meaningful way from [the three] previous *Bivens* cases,' a radical difference is not required." *Tu-Cos*, 922 F.3d at 523 (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). The Court has provided non-exhaustive examples and explained that:

---

[5] In *Egbert*, the Supreme Court noted that: "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. However, the Fourth Circuit has continued to utilize the two-step inquiry even after *Egbert*. *See, e.g.*, *Bulger*, 62 F.4th at 137–41 (applying two-part inquiry to find no *Bivens* remedy for failure to protect claim); *Tate v. Harmon*, 54 F.4th 839, 844–48 (4th Cir. 2022) (applying two-part inquiry to find no *Bivens* remedy for conditions of confinement claim).

7

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. And more recently, the Supreme Court added that "'uncertainty alone', as to whether allowing a *Bivens* claim would have systematic consequences," is sufficient to foreclose relief. *Tate*, 54 F.4th at 846 (quoting *Egbert*, 596 U.S. at 493).

The Fourth Circuit has recognized that "[t]he Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*," and thus, has "repeatedly heeded that warning." *Bulger*, 62 F.4th at 137. In recent years, the Fourth Circuit has determined that a claim that Bureau of Prisons officials failed to stop a transfer to a lower-grade medical facility and failed to protect an inmate from inmate-on-inmate violence resulting in his death constituted a new context. *See id.* Similarly, the Fourth Circuit has concluded that an inmate's "'degenerate' conditions of confinement" claim was sufficiently different "from any Supreme Court decision finding a *Bivens* cause of action." *Tate*, 54 F.4th at 842.[6]

---

[6] In *Tate*, the Fourth Circuit also dispelled any notion that *Farmer v. Brennan*, 511 U.S. 825 (1994) provided a fourth context for *Bivens* in the Eighth Amendment prisoner arena. 54 F.4th at 847. The Fourth Circuit explained:
> In *Farmer*, the Eighth Amendment claim involved the failure of prison officials to protect an inmate from an attack that involved a beating and rape, even though the officials knew that the prison had a "violent environment" and that the inmate was "particularly vulnerable to sexual attack." 511 U.S. at 831. Importantly, however while the Court allowed the action to proceed, it never addressed whether the claim was properly a *Bivens* claim. Moreover, the Court has never considered *Farmer* a *Bivens* case when cataloging *all* of its *Bivens* cases. *See Egbert*, 142 S. Ct. at 1799–1800, 1802; *Hernandez*, 140 S. Ct. at 741; *Ziglar*, 137 S Ct. at 1844–55, 1857.

*Id.* (parallel citations omitted).

Applying these principles, the Court concludes that Moyhernadez's Eighth Amendment claim presents a new *Bivens* context. Although *Carlson* also involved an Eighth Amendment claim, the context is sufficiently different. As the Fourth Circuit has explained,

> [t]o be sure, the claim authorized in *Carlson* was an Eighth Amendment claim. However, the Supreme Court has made clear that courts should not interpret *Carlson* to apply outside the precise context at issue in that case, noting that even claims challenging the adequacy of medical care may involve the same 'right and . . . mechanism of injury' as in *Carlson* but still present 'different' contexts. As noted, *Carlson* "involved a prison official's deliberate indifference to an inmate's health by failing to provide competent medical care after the inmate suffered a severe asthma attack leading to the inmate's death."

*Bulger*, 62 F.4th at 138 (citations omitted)).

Here in contrast, Moyhernandez's claim is premised not on a failure to provide adequate medical care, but instead on the premise that Defendants unlawfully assigned him to a cell with an inmate who had HSV-2. Moyhernandez's claim implicates unlawful conditions of confinement and a failure to protect Moyhernandez from the risk of catching his cellmate's HSV-2 because they did not warn him of his cellmate's condition. This claim "exceed[s] the bounds of liability the Court's previous *Bivens* actions established, implicating 'not only the scope of [each official's] responsibilities and duties' but also the organizational policies, administrative decisions, . . . economic concerns inextricably tied to inmate . . . housing placements decisions" and even medical privacy law. *Id.* (citing *Tate*, 54 F.4th at 846). Under the "highly restrictive" standard this Court must apply, *see Bulger*, 62 F.4th at 137, it is quite clear that Moyhernadez's claim is materially different from the claim that *Carlson* recognized, i.e., the failure to provide adequate medical care. *Cf. Nellson v. Doe*, 2023 WL 3336689, at *3–4 (4th Cir. May 10, 2023) (concluding that disabled inmate's challenge to placement in Special Housing Unit where wheelchairs are not allowed fell outside the context of *Carlson*); *Bulger*, 62 F.4th at 138 (determining that conditions of confinement and failure-to-protect claims constituted

9

a new context); *Tate*, 54 F.4th at 846–47 (finding "materially distinct" from *Carlson* a claim alleging deliberate indifference from placement in unit where conditions put inmate's health at risk).

### C. Special Factors

The second step of the analysis requires the Court to determine whether there are any "special factors counselling hesitation in the absence of affirmative action by Congress" in recognizing an implied cause of action under *Bivens*. *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must center on 'separation-of-powers principles.'" *Tate*, 54 F.4th at 844 (citing *Hernandez*, 140 S. Ct. at 743). The special factors that courts should consider "overlap [with] the factors courts are to consider when determining whether a purported *Bivens* claim arise out of a new context." *Bulger*, 62 F.4th at 140 (citing *Egbert*, 62 F.4th at 492). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (citing *Hernandez*, 140 S. Ct. at 743). Once again, the Supreme Court has not provided a comprehensive list of special factors, but the lower "courts are instructed to consider 'whether the Judiciary is well suited, absent congressional action, or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Dyer*, 56 F.4th at 278–79 (quoting *Ziglar*, 582 U.S. at 136). Courts must also look at whether "there is an alternative remedial structure present in a certain case." *Id.* "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). Moreover, the Fourth Circuit has repeatedly "held that . . . that special factors . . . counsel against extending *Bivens* in

the prison context." *Nellson*, 2023 WL 3336689, at *5 (citing *Bulger*, 62 4th at 139–42; *Tate*, 54 F.4th at 847–48).

### 1. Moyhernandez Has Alternative Remedies

Here, alternative remedies exist for Moyhernandez to pursue his underlying claim. Respondent contends that Moyhernandez may file grievances through the Bureau of Prisons's Administrative Remedy Program (ARP"). Specifically, the ARP allows "all inmates in institutions operated by the Bureau of Prisons," 28 C.F.R. § 542.10(b), "to seek formal review of an issue relating to any aspect of his/her own confinement." *Id.* § 542.10(a). Although the ARP does not provide the opportunity for monetary damages, it "nevertheless offer[s] the possibility of meaningful relief and therefore remain[s] relevant to [the court's] analysis." *Earle v. Shreves*, 990 F.3d 774, 780 (4th Cir. 2021) (citations omitted). The Supreme Court has determined that "*Bivens* relief was unavailable because federal prisoners could, among other options," use the ARP to pursue a claim. *Egbert*, 596 U.S. at 497 (citing *Malesko*, 534 U.S. at 74); *see Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim," and determining that it "need not inquire any further to decide this appeal" (citing *Egbert*, 596 U.S. at 497)).[7]

### 2. Other Special Factors Counsel Against an Extension

While the existence of the ARP is likely reason enough to foreclose Moyhernadez's claim, other special factors counsel against recognizing a cause of action under *Bivens*.

---

[7] Moyhernandez may also seek relief under the Federal Torts Claim Act ("FTCA"). The FTCA creates a limited waiver of the sovereign immunity of the United States "by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (citing 28 U.S.C. § 1346(b)(1)). Moyhernandez has not raised such a claim here.

"[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 582 U.S. at 148. The Supreme Court recognized that:

> "[s]ome 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. The Court has said in dicta that the Act's exhaustion provisions would not apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 148–49 (internal citations omitted). As the Fourth Circuit explained recently, "Congress's decision not to include an individual-capacity damages remedy in the Prison Litigation Reform Act 'speaks volumes and counsels strongly against judicial usurpation of the legislative function.'" *Nellson*, 2023 WL 3336689, at *5 (citing *Bulger*, 62 F.4th at 140–41). Accordingly, the lack of legislative action counsels against extending a *Bivens* remedy to other types of Eighth Amendment claims, such as the one presented here. *See id.*; *cf. Springer v. United States*, No. 21-11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) (determining that Congress "has legislated (post-*Carlson*) regarding prisoners' rights" and chose not "to extend *Carlson* to other 'kinds' if prisoner claims under the Eighth Amendment" and that a conditions-of-confinement claim "is an issue best left for Congress to address").

Moyhernandez's claim also "intersect[s] with the statutory scheme delegating authority over prison . . . housing decisions to the BOP." *Bulger*, 62 F.4th at 140 (citation omitted). Thus, there is reason to believe in this context that "[t]he political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" *Tate*, 54 F.4th at 848 (quoting *Egbert*, 596 U.S. at 493). Separation-of-powers concerns therefore counsel hesitation in extending an implied right of action under *Bivens* here.

12

The Supreme Court has made clear that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 140 S. Ct. at 743). As discussed above, several special factors counsel against expanding the remedy. Thus, the Court concludes that *Bivens* does not constitute a cognizable remedy for Moyhernandez's Eighth Amendment claim. Accordingly, the Motion to Dismiss will be GRANTED.

### IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 31) will be GRANTED. Claim One and the action will be DISMISSED for want of jurisdiction and as legally frivolous. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Moyhernandez.

                                                 /s/
                                       David J. Novak
                                       United States District Judge

Richmond, Virginia
Dated: December 13, 2023